# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

**RONNIE WAYNE DANIELS,**

    Plaintiff,

vs.                                    Case No. 4:05cv171-MP/WCS

**JAMES CROSBY, in his
individual capacity, and
JAMES McDONOUGH, in his
official capacity as Secretary,
Florida Department of Corrections,**

    Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff brings this suit against James Crosby, in his individual capacity, and against James McDonough, in his official capacity, pursuant to 42 U.S.C.§ 1983. Docs. 7 (amended complaint) and 41 (order). Defendants filed a special report. Doc. 34. The special report has been treated as a motion for summary judgment, and notice was given to Plaintiff regarding his responsibility to file a response. Doc. 43. Plaintiff filed a response. Doc. 47. Plaintiff also filed a motion for leave to file his own motion for summary judgment. Doc. 44. While that motion has been denied, the arguments in the

amended motion for summary judgment and exhibits, doc. 45, have been considered in this report and recommendation.

**Plaintiff's claim**

Plaintiff is serving a life sentence imposed in 1983 by a court in Kentucky. Doc. 34, Ex. 1 (attached Ex. A, state petition for writ of mandamus); doc. 34-3, pp. 19-21.[1] Plaintiff has been serving that sentence since 1988 in the custody of the Florida Department of Corrections pursuant to the Interstate Corrections Compact.

Plaintiff alleges that Kentucky pays prisoners for work they do in prison at the rate of $1 per day. Plaintiff contends that Defendants owe him these back wages, and that the failure to pay him is a denial of property or liberty interest without due process under the Fourteenth Amendment.

**Procedural history**

In addition to pursuing administrative grievances, Plaintiff filed a petition for writ of mandamus in the circuit court for the Fourteenth Judicial Circuit, in and for Calhoun County, Florida, case number 02-53 CA. Doc. 34, Ex. 1 (petition); doc. 34-3, pp. 6-18 (attachments omitted). Plaintiff alleged that were he serving his sentence in Kentucky, he might earn as much as $2 per day, but in Florida, he received no pay for work. *Id.*; doc. 34-3, pp. 11-12. He claimed entitlement to pay, to possess the same kind of personal property (typewriter, television, stereo receiver, ice chest, hot pot, bed linen) he was allowed to possess in Kentucky, and to enroll in a vocational trade as he was allowed to do in Kentucky. *Id.*, doc. 34-3, pp. 8, 12. He sought back pay ($9,586.00),

---

[1] The first page references are to the paper documents as filed; the second is to the document numbers and pagination assigned on the electronic docket.

the right to possess property as alleged above, and to "benefit from vocational education." *Id.*; doc. 34-3, p. 13. The premise of the suit was the "original" FLA. ADMIN. CODE. 33-301.101 and the Interstate Corrections Compact. *Id.*

The circuit court denied the petition. The court found that:

> Petitioner has failed to show that he has a legal right to be paid, to be placed in any certain vocational programs or to possess property which is prohibited under Department rules.

*Id.*, Ex. 1; doc. 34-6, p. 17.[2]

Plaintiff appealed. The First District Court of Appeal affirmed, finding:

> [W]e agree with the circuit court that Daniels failed to establish a clear legal right to possess personal property permitted under Kentucky prison regulations but prohibited under those of the FDOC, or to be paid monetary wages for his institutional work, which Daniels alleged would be the case were he confined in a Kentucky institution. *See generally Jennings v. Lombardi*, 70 F.3d 994 (8th Cir. 1995); *Daye v. State*, 171 Vt. 475, 769 A.2d 630 (2000); *Vigue v. Underwood*, 139 S.W.3d 168 (Ky. Ct.App. 2004); *Glick v. Holden*, 889 P.2d 1389 (Utah Ct.App.1995).

<u>Daniels v. Crosby</u>, 888 So. 2d 668, 669 (Fla. 1st DCA 2004); doc. 34, ex. 11; doc. 34-10, pp. 7-10. The court also rejected the claim that Plaintiff had been denied vocational programs, finding that he had been allowed to participate in at least one program, and failed to show that he "was denied access by FDOC to any program in which he would have been entitled to participate had he been confined in Kentucky." 888 So. 2d at 670; doc. 34-10, p. 10.

---

[2] The court also found that Plaintiff's request for injunctive relief was moot because he was no longer in the custody of the Florida Department of Corrections. *Id.* However, Defendant acknowledges that Plaintiff is still in its custody and thus Plaintiff's request in the case at bar for injunctive relief is not moot. Doc. 34, p. 3, n. 2.

**Legal standards governing a motion for summary judgment**

On a motion for summary judgment Defendants initially have the burden to demonstrate an absence of evidence to support the nonmoving party's case. Celotex Corporation v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2553-54, 91 L. Ed. 2d 265 (1986). If Defendants do so, the burden shifts to Plaintiff to come forward with evidentiary material demonstrating a genuine issue of material fact for trial. *Id.* An issue of fact is "material" if it could affect the outcome of the case. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted). Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence is insufficient. The court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Hickson Corp., 357 F.3d at 1260, *quoting* Anderson v. Liberty Lobby, 477 U.S. 242, 252, 106 S. Ct. 2505, 2505, 91 L. Ed. 2d 202 (1986). All reasonable inferences must be resolved in the light most favorable to the nonmoving party. Watkins v. Ford Motor Co., 190 F.3d 1213, 1216 (11th Cir. 1999).

**Undisputed facts**

The following summary of the undisputed facts is copied from Defendants' special report. Doc. 34, pp. 10-12; doc. 34-1, pp. 10-12. These facts have not been disputed by Plaintiff.

1. In 1988, pursuant to the Interstate Corrections Compact (FLA. STAT. § 941.56) and a contract for services between Kentucky and Florida, Plaintiff

entered the custody of the Florida Department of Corrections to serve sentences imposed by the State of Kentucky.

2. The Interstate Corrections Compact authorizes participating states to contract with other participating states for the confinement of inmates on behalf of the sending state in institutions located within receiving states. FLA. STAT. § 941.56, Art. III(a) (2005).

3. The contract between Florida and Kentucky contains a section entitled "Training or Employment" that states that inmates from the sending state will work on the same basis as inmates of the receiving state and "[c]ompensation in connection with any such participation (whether payment, incentive, or for any other therapeutic or rehabilitative reason) shall be paid to inmates of the sending state on the same basis as to inmates of the receiving state." (EXHIBIT 1, p. 23).

4. The Florida Department of Corrections provides gain-time awards, not monetary awards, to inmates as compensation for work performed in its institutions.

5. In February of 2004, Plaintiff submitted a Request for Administrative Remedy or Appeal to the Kentucky Department of Corrections contending that Florida was not honoring the Interstate Corrections Compact and the contract between Kentucky and Florida. In the Request, Plaintiff complained about the Florida Department of Corrections paying inmates with gain-time rather than money for work, and he asserted that the Kentucky Department of Corrections owed him "16 years pay for work" he had done. (EXHIBIT 13, p. 1).

6. In response to Plaintiff's Request for Administrative Remedy or Appeal, the State of Kentucky issued a letter advising Plaintiff that the Kentucky Department of Corrections was attempting to ascertain the work schedules and duties that its inmates were doing in other states to determine if inmate 'pay' should be authorized. (EXHIBIT 13, p. 2).

7. At some point shortly thereafter, Plaintiff began receiving monetary compensation from the State of Kentucky for work performed while in the custody of the Florida Department of Corrections since 2004.

8. Plaintiff has litigated in the state courts of Florida the issue of whether he is entitled under Florida law and under the ICC contract between Florida and Kentucky to be paid wages by the Florida

Department of Corrections . (EXHIBIT 1-7, 9-11). The state courts of Florida have determined that Plaintiff has no right under the laws of Florida (and the ensuing contract for services between Florida and Kentucky) to be paid wages by the Florida Department of Corrections. (EXHIBIT 1, p. 95; EXHIBIT 11).

In addition to these facts, the following is also not disputed. Kentucky pays its prisoners for work performed in prison. KY. STAT. § 197.110(4). Doc. 45, Ex. A (KY. CORRECTIONS POLICY NO. 19.3); doc. 45-2, pp. 2-6.

The Interstate Corrections Compact, enacted as a Florida statute, provides in part that:

> (e) All inmates who may be confined in an institution pursuant to the provisions of this compact shall be treated in a reasonable and humane manner and *shall be treated equally with such similar inmates of the receiving state as may be confined in the same institution*. The fact of confinement in a receiving state *shall not deprive any inmate so confined of any legal rights which said inmate would have had if confined in an appropriate institution of the sending state*.

FLA. STAT. § 941.56, Art. IV (e) (emphasis added). The Compact also provides that each party state may make contracts with other party states providing for "[p]articipation in programs of inmate employment, if any; the disposition or crediting of any payments received by inmates on account thereof; and the crediting of proceeds from, or disposal of, any products resulting therefrom." *Id.*, Art. III (a) 3.

The contract between Florida and Kentucky provides in part that "[f]unds due transferred inmates shall be provided by the sending state [Kentucky] to be credited to the account of the transferred inmate in the receiving state [Florida]." Doc. 34, Ex. 1, contract p. 3, ¶ 12; doc. 34-3, pp. 26, ¶ 12. The contract also provides that Florida is not required "to provide treatment, facilities or programs for any inmate confined pursuant to the Interstate Corrections Compact which it does not provide for similar

inmates not confined pursuant to said Compact."  *Id.*, ¶ 13.  Finally, the contract provided that:

> Inmates from the sending state shall be afforded the opportunity and shall be required to participate in programs of occupational training and industrial or other work on the same basis as inmates of the receiving state [Florida].  *Compensation* in connection with any such participation (whether payment, incentive, or for any other therapeutic or rehabilitative reason) shall be paid to inmates of the sending state *on the same basis as to inmates of the receiving state [Florida]*. . . .

*Id.*, p. 5, ¶ 14 (a); doc. 34-3, p. 28, ¶ 15 (a) (emphasis added).

As explained by Defendant in its supplemental response in the First District Court of Appeal, the Florida Department of Corrections implemented the Interstate Corrections Compact in 1981 with the enactment of FLA. ADMIN. CODE 33-21.01.  Of particular relevance to this case, Rule 33-21.01(5)(e) as filed with the Secretary of State on June 17, 1981, and provided:

> (5) (e) Inmates confined under the Interstate Compact shall be afforded the opportunity and shall be required to participate in programs of occupational training, industrial or other work on the same basis as inmates of the *sending state* [Kentucky]. . . .

Doc. 34, Ex. 9, p. 2, quoting attached Ex. A, p. 4; doc. 34-3, p. 3, quoting attached Ex. A, p. 4 (which is doc. 34-3, p. 15).  This clearly was a scrivener's error because it contravened Florida's contract with Kentucky.  Moreover, the accompanying "Statement of Changes" provided:

> In response to a proposed objection by the Joint Administrative Procedures Committed, "sending state" was changed to "receiving state" in 33-21.01(5)(e).  This change is necessary to conform the rule with section 941.56, Article IV(e), F.S.

Doc. 34, Ex. 9, attached Ex. A, p. 13; doc. 34-3, p. 24.  As noted above, however, this intended change did not occur in the Rule as filed.

Case No. 4:05cv171-MP/WCS

On February 17, 2003, the Rule was renumbered 33-601.401(5)(e), but the error was not noticed or corrected with the Secretary of State.  On September 20, 2004, the Department of Corrections wrote to the Secretary of State to "correct an error that originated when the rule was filed for adoption in 1981."  Doc. 34, Ex. 9, attached Ex. H, p. 1; doc. 34-3, p. 33.  The letter referred to the "statement of changes" that accompanied the Rule as filed with the Secretary of State, evidencing an intent that "receiving state" should have been in the version of Rule 33-21.01(5)(e) as filed.  *Id.*  The letter further explained that the Department of Corrections had "maintained the correct version on its database and operated under the correct version."  *Id.*, p. 2; doc. 34-3, p. 34.  The Department reasoned that "the only version of the rule that the Department could correctly file was a version consistent with the statement of changes."  *Id.*  The change sought, therefore, was asserted to be only a "technical" change rather than a substantive change.  *Id.* and p. 3; doc. 34-3, pp. 34-35.

**Legal analysis**

Though Defendant has raised numerous meritorious defenses, it is unnecessary to address them.  Plaintiff has failed to show any liberty or property interest in wages for his work in prison, possession of particular items of personal property, or involvement in rehabilitative programs.

> The Due Process Clause of the Fourteenth Amendment provides no state "shall . . . deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend XIV, § 1.  "Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property." *Carey v. Piphus*, 435 U.S. 247, 259, 98 S.Ct. 1042, 1050, 55 L.Ed.2d 252 (1978). "In this circuit, a § 1983 claim alleging a denial of procedural due process requires proof of three elements: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and

(3) constitutionally-inadequate process." *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003) (citing *Cryder v. Oxendine*, 24 F.3d 175, 177 (11th Cir. 1994)).

Arrington v. Helms, 438 F.3d 1336, 1347-1348 (11th Cir. 2006).

The first step is to identify a liberty or property interest:

Property interests stem not from the Constitution, but from such sources as statutes, regulations, ordinances, and contracts. *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 576-77, 92 S.Ct. 2701, 2708-09, 33 L.Ed.2d 548 (1972). Whether these sources create a property interest must be decided by reference to state law. *Id.* at 577, 92 S.Ct. at 2709.

438 F.3d at 1348.[3] Likewise, state law can give rise to a liberty interest for purposes of procedural due process when state-created procedures place substantive limitations upon official discretion. *E.g.*, Kentucky Department of Corrections v. Thompson, 490 U.S. 454, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989); Hewitt v. Helms, 459 U.S. 460, 471-472, 103 S.Ct. 864, 871, 74 L.Ed.2d 675 (1983); Bass v. Perrin, 170 F.3d 1312, 1318 (11th Cir. 1999).[4]

Federal courts in Florida must follow the decisions of the intermediate courts of appeal in Florida when there are no state supreme court decisions on point, "unless

---

[3] Because the Constitution protects rather than creates property interests, the existence of a property interest is determined by reference to 'existing rules or understandings that stem from an independent source such as state law.' *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)." Phillips v. Washington Legal Foundation, 524 U.S. 156, 163-164, 118 S.Ct. 1925, 1930, 141 L.Ed.2d 174 (1998).

[4] Otherwise, due process in the prison setting is limited to something that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 485, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995). Failure to pay Plaintiff a wage for his work in prison does not impose an atypical hardship upon Plaintiff. Indeed, the hardship is typical for Florida prisoners. Villarreal v. Woodham, 113 F.3d 202 (11th Cir. 1997) (finding that failure to pay a wage to a pretrial detainee for performing translation services did not violate the Fair Labor Standards Act or the Eighth Amendment).

there is some persuasive indication that the highest court of the state would decide the issue differently." McMahan v. Toto, 311 F.3d 1077, 1080 (11th Cir. 2002), *cert. denied sub nom.*, Nemesis Veritas, L.P. v. Toto, 539 U.S. 914 (2003). In this case, a Florida appellate court has definitively ruled that Plaintiff does not have a claim to wages, possession of property, or rehabilitative programs under Florida law. This court is not "at liberty to challenge this state court determination of state law." Cargill v. Turpin, 120 F.3d 1366, 1381 (11th Cir. 1997), *cert. denied*, 523 U.S. 1080 (1998), citing McBride v. Sharpe, 25 F.3d 962, 972 (11th Cir.) (en banc ), *cert. denied*, 513 U.S. 990 (1994).[5] Necessarily, therefore, Defendants did not need to provide procedural due process with respect to the denial of these things.

Plaintiff also makes the argument that he is precluded by Florida law from challenging an administrative rule because he is a prisoner, citing FLA. STAT. § 120.81(3). While that is true, Plaintiff was afforded an adequate remedy in the courts of Florida, and he pursued that remedy. There he was permitted to argue that the Interstate Corrections Compact and the contract with Kentucky required that he be paid a wage, allowed to possess certain items of property, and participate in rehabilitative programs. These arguments necessarily precede any challenge to or argument based upon the implementing rule. Likewise, he fully litigated his contention that the Department was required to follow the incorrect version of the rule that they had filed

---

[5] "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." McBride v. Sharpe, 25 F.3d at 972, quoting Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991) (citations omitted). While this rules was applied in these habeas cases, the rule is equally applicable to a civil right suit filed under 42 U.S.C. §1983.

with the Secretary of State in 1981. A rule challenge would not have afforded Plaintiff a better forum for his arguments.

It also has not gone unnoticed that the Interstate Corrections Compact as enacted in Florida provides that: "The fact of confinement in a receiving state shall not deprive any inmate so confined of any legal rights which said inmate would have had if confined in an appropriate institution of the sending state." FLA. STAT. § 941.56, Art. IV (e). The First District Court of Appeal considered this provision, along with the other provisions of Florida law, to find that Plaintiff has no legal right under Florida law to the relief he seeks. Plaintiff is receiving pay now from the State of Kentucky, and this presumably now satisfies the promise that he not be deprived of "any legal rights" he would have had if confined in Kentucky. That this is so, however, is immaterial to the result of this case. While Kentucky officials may owe a legal duty to Plaintiff, the Defendants in this case, under Florida law, do not.

Accordingly, it is **RECOMMENDED** that Defendants' motion for summary judgment, doc. 34, be **GRANTED**, and the Clerk directed to enter judgment in Defendants' favor.

**IN CHAMBERS** at Tallahassee, Florida, on July 13, 2006.

s/    William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

Case No. 4:05cv171-MP/WCS

## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**